# IN RE CREVELING.

---

PATENTS; PATENTABILITY; PROCESS CLAIMS; INCOMPLETE PROCESS; INAC-
    CURATE CLAIM; PRIOR APPARATUS PATENT; IDENTICAL SUBJECT-
    MATTER; DOUBLE PATENTING.

1. Claims to an alleged process of regulating a generator are not patent-
    able, where they do not include all of the steps necessary to effect the
    result stated, or any useful result.

2. A claim purporting to cover a method cannot be regarded as patentable
    where it is lacking in one of the steps which, in accordance with the
    statement of invention, description, and drawings, is essential to the
    carrying out of the alleged method.

3. Where an alleged process claim includes the step of rotating an arma-
    ture and concludes "and by said motion in one direction increasing
    the output of the generator and in the other direction decreasing the
    said output," but it appears that the result stated is not accomplished
    by the mere motion of the armature, but by the interposition of other
    means, there is no foundation in the case for the claim.

4. A claim which is inaccurate is not patentable.

5. Alleged process claims *held* not to be patentable, in view of a prior pat-
    ent to the same applicant upon the apparatus disclosed.

6. Where the only suggestion of a method as a distinctive part of an in-
    ventive concept in the specification is in the use of the word "method"

at two places therein, and it does not appear that there is any difference in the inventive concept underlying such disclosure from that underlying the disclosure in a patent to the applicant upon the apparatus, the alleged method claims are not patentable.

7. Where an application is made for a patent upon an alleged method after a patent has been granted upon the apparatus, and it appears that the substitution of the word "means" for the word "method" at two places would not change the sense, and would make the disclosure in the application the same as that in the patent, to grant the alleged method claims would result in two patents for substantially the same thing.

No. 263.   Patent Appeals.   Submitted March 14, 1905.   Decided May 23, 1905.

HEARING on an appeal from a decision of the Commissioner of Patents rejecting the claims of an applicant for a patent.

*Affirmed.*

The facts are sufficiently stated in the opinion.

The appellant, Mr. John L. Creveling, appeared in proper person.

*Mr. John M. Coit* for the Commissioner of Patents.

Mr. Justice DUELL delivered the opinion of the Court:

This is an appeal from a decision of the Commissioner of Patents rejecting the claims of an application for a patent filed by the appellant, John L. Creveling.

The claims are as follows:

"1. The herein-described method of regulating a generator which consists in creating an independently determined magnetomotive force, and creating an opposing magnetomotive force which is a function of the current generated and thus producing a resultant magnetic field whose polarity is dependent upon the current generated, exposing to the influence of the above-named resultant magnetic field, a member tending to set up an inde-

pendent magnetic field, producing motion in a positive or negative direction depending upon the polarity of the resultant magnetic field and by said motion in one direction, increasing the output of the generator and in the other direction, decreasing the said output.

"2. The herein-described method of regulating a dynamo or generator, which consists in setting up a resultant magnetic field by the difference in effect between a magnetomotive force which is a function of the current generated and an independently determined magnetomotive force, and by the action of the third magnetomotive force exerting its influence upon the resultant field causing a rotary member to so rotate as to effect the regulation of the generator.

"3. The herein-described method of regulating a generator which consists in creating a resultant magnetic field, the strength and direction of which is determined by the action of a magnetomotive force which is a function of the current generated and a predetermined magnetomotive force, and acting upon the said magnetic field with another flux, and by the action of the last-named flux and the resultant magnetic field producing mechanical motion, and by such motion effecting the regulation of the output of the generator.

"4. The herein-described method of regulating a generator or dynamo which consists in creating a resultant magnetic field by the combined effect of a magnetomotive force which is a function of the current generated, a predetermined magnetomotive force, and acting upon another magnetomotive force with the resultant flux to produce mechanical motion, and by such mechanical motion regulating the output of the generator.

"5. The herein-described method of regulating the output of a generator which consists in producing mechanical motion by the combined action of a flux which is the resultant effect of a magnetic motive force which is a function of the current generated and a determined magnetomotive force and another flux substantially as specified."

The application is for "methods of regulating dynamo-electric machines." The specification states that the invention "re-

lates to methods of regulating dynamo-electric machines," and the claims purport to cover a method of regulating a generator, but the specification is otherwise entirely confined to a description of the construction and operation of the apparatus shown in the drawings. We do not find it necessary, however, to enlarge upon the discussion of what constitutes a patentable method or process, so many times exhaustively treated in decisions of this court, and of the Supreme Court of the United States, since we are satisfied that in the present case the claims here in question do not set forth a patentable method when considered in the light of the specification on which they are founded. The specification further states that the invention "may be said generally to consist in varying a field or other circuit of the machine by means of an electric-motor device in which an independently determined magnetomotive force is opposed by a magnetomotive force which is a function of the current generated, thus producing a resultant magnetic field whose polarity is dependent upon the current generated and in which there is exposed to the action of the resultant magnetic fluid a member tending to set up an independent magnetic field, producing motion in a positive or negative direction, said motion causing the generator to be regulated in the manner described."

Upon examination we find that the specification and drawings describe and show a generator, a motor the armature of which is caused to rotate in one or the other direction as a result of a change in its field caused by the relation between a determined magnetomotive force derived from a battery and a variable magnetomotive force depending upon the current output of the generator. This rotation of the motor-armature is utilized for moving the arm of a variable resistance device to vary the resistance in the field of the generator and thereby regulate the output of said generator. The variable resistance or rheostat is described as follows: "A suitable rheostat or variable resistance 24 connected by wire 25 to the wire 23."

Further:

" * * * The motor will rotate to step the rheostat-arm

over the contacts of the rheostat, thereby cutting down the field and varying the output of the generator.   *   *   * ''

Claim 1, after defining the alleged steps of the method in accordance with which motion in a given direction dependent upon the current output is obtained, concludes "and by said motion in one direction increasing the output of the generator and in the other direction decreasing the said output."

This language finds no proper basis in the specification or drawing. There is no suggestion therein that the desired result can be attained without the presence of a means which is at least the equivalent of a variable-resistance device, or a step in accordance with which the motion of the motor may be utilized and guided to obtain the desired effect upon the generator. The claim, as it reads, simply calls for increasing the output of the generator by motion in one direction and decreasing said output by motion in another direction. The claim, accordingly, appears to be neither a broad statement of the essence of the invention, nor a statement of a segregable part thereof, in itself novel or capable of producing a useful result. It is, upon its face, a claim purporting to cover a method but lacking one of the steps which, in accordance with the statement of invention quoted above and the description and drawings upon which the claim is based, is essential to the carrying out of the alleged method. The claim is, accordingly, defective in that it fails to set forth the steps necessary to produce the intended result. The applicant has not disclosed or given to the public, so far as appears from this record, an invention such as that which it is here attempted to claim.

Claim 2 is even more defective. The language there used is "causing a rotary member to so rotate as to effect the regulation of the generator."

The specification does not teach a method whereby this step can be carried out in this way, but only by virtue of a further apparently essential element or step, and the claim is accordingly inaccurate, and not patentable herein.

Claim 3, after defining the steps of the alleged method by

which the mechanical motion is produced, closes "and by such motion effecting the regulation of the output of the generator."

The language of claim 4 is "and by such mechanical motion regulating the output of said generator."

These claims are inaccurate, and not patentable herein, for the reasons already stated.

The definitive part of claim 5 refers only to an alleged method of producing mechanical motion. It is not contended that this method of producing mechanical motion is novel in and of itself, and the patentability of the method could accordingly rest, if at all, only upon the steps by which the mechanical motion is utilized for regulating the generator, which steps are not set forth in this claim.

It is accordingly clear that none of the claims here in question contain a proper definition of the invention set forth in the specification and drawings, irrespective of the propriety of the form of said claims as purporting to cover a method or process.

This being clear, the only further necessary discussion of the questions presented by this record is sharply indicated. If the claims are to be interpreted as referring back to the specification and drawings and including the apparently necessary elements which they now lack, and which would involve a proper definition of the utilization of the mechanical motion produced by the controlling-motor for regulating the generator, this can only be done by reading into the claims what, so far as the record shows, amounts merely to the utilization of a variable-resistance device or equivalent means which, being controlled by the mechanical motion of the controlling-motor, would by its action effect the desired regulation of the generator. Under whatever language it might be claimed, this would apparently amount to no more than the utilization of means of some character, although it might include a variety of different means, adapted to control the generator output in accordance with the imparted motion. If these claims were to be so interpreted, it would appear that they would then be of substantially the same scope as claims 12 to 16 inclusive of the patent granted to this applicant on February 17, 1903, for system of electrical distribution, and

numbered 720,674, and, in the absence of any showing on the part of applicant to the contrary, we are constrained so to hold. For example, we note the language of claim 12 of the patent:

"In a system of distribution, means regulating a generator, comprehending means creating an independently determined magnetomotive force, means creating an opposing magnetomotive force which is a function of the current generated and thus producing a resultant magnetic field whose polarity is dependent upon the current generated, means exposed to the influence of the above-named resultant magnetic field tending to set up an independent magnetic field, producing motion in a positive or negative direction dependent upon the polarity of the resultant magnetic field, and means whereby said motion in one direction increases the output of the generator and in the other direction decreases the said output."

This claim includes the feature of the "means" between the motor and generator which is lacking in the claims of the application before us. Otherwise, on the present showing, there is no substantial distinction. The difference in language does not appear to be based upon a difference in patentable subject-matter.

It has already been noted that the only suggestion of a method as a distinctive part of an inventive concept in the specification of the patent application is in the use of the word "methods" at two places therein. The specification would be fully as intelligible and the disclosure thereof would not be modified if the word "means" were substituted for "methods" in each of these two places. It has not been shown to us that the applicant in the present application has disclosed anything which was not fully disclosed in the patent issued to him on February 17, 1903. It has not been shown that there is any difference in the inventive concept underlying the present disclosure and that of his prior patent and, on the contrary, the reverse appears to be the case. Accordingly, even if we were justified in disregarding the character of the claims presented and referring to the invention itself, as disclosed, in determining the patentability thereof, we should be constrained to hold that the issuance of a

patent upon the present application would be, in effect, a grant to the applicant of the same extent as that of his prior patent and the final disposal of the case would not be affected.

It accordingly follows that the decision of the Commissioner of Patents must be affirmed, and it is so ordered.

The clerk of the court will certify this opinion and the proceedings in this court in the premises to the Commissioner of Patents, according to law.                    *Affirmed.*